UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EBONY T. JOHNSON,<br><br>   *Plaintiff*,<br><br> v.<br><br>LOUIS DEJOY, *et al.*,<br><br>   *Defendants*. | Civil Action No. 23-2342 (LLA) |

**MEMORANDUM OPINION**

Plaintiff Ebony T. Johnson brings this action against Postmaster General of the United States Louis DeJoy and the United States Postal Service (collectively, "USPS"), alleging violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* ECF No. 1. The USPS moves to dismiss or, in the alternative, for summary judgment. ECF No. 13. For the reasons explained below, the court will grant the USPS's motion to dismiss.

    **I.**  **Factual Background**

For purposes of resolving the USPS's motion to dismiss, the court accepts Ms. Johnson's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ms. Johnson has worked at the USPS since 2005 and became a full-time mail carrier in 2006. ECF No. 1 ¶ 7. In November 2006, she was "wrongfully accused of hitting a customer with her mail truck and leaving the scene." *Id.* ¶ 8. She "was sent home for about eight months before being offered her job back," and she was not "paid for the pain suffered" as a result of the incident. *Id.* In December 2007, while two months pregnant, Ms. Johnson "suffered an on-the-job injury when she fell down a flight of stairs while delivering mail." *Id.* She injured her lower back and

tailbone, requiring medical treatment. *Id.* ¶ 9. "Tragically, the fall also resulted in the loss of [her] pregnancy." *Id.* ¶ 10. Because of the accident, Ms. Johnson suffered from "a severely depressed mood, anxiety, and symptoms of post-traumatic stress." *Id.* ¶ 11. She was eventually diagnosed with bipolar disorder and post-traumatic stress disorder ("PTSD"). *Id.* "Due to her physical injuries and the onset of her psychological symptoms, [Ms. Johnson] sought leave under the FMLA, but was denied." *Id.* ¶ 12.

In March 2019, Ms. Johnson "sustained an on-the-job injury." *Id.* ¶ 13. She took leave approved by the Office of Workers' Compensation Programs ("OWCP") and returned to work in January 2020. *Id.* ¶¶ 13-14; *see Pueschel v. Chao*, 357 F. Supp. 3d 18, 24 (D.D.C. 2018), *aff'd*, 955 F.3d 163 (D.C. Cir. 2020) (noting that the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.*, governs OWCP benefits). After returning to work, Ms. Johnson allegedly "notif[ied] supervisors and management of her disabilities and request[ed] reasonable accommodations." *Id.* ¶ 15. Instead, the USPS "reacted by creating a hostile work environment and retaliating against" her. *Id.* ¶ 16. Ms. Johnson's supervisor, Ebbonni Clark, "refus[ed] to sign and return [her] leave slips and improperly cod[ed] her OWCP-approved leave as Absent-Without-Leave ('AWOL') and Leave Without Pay ('LWOP')." *Id.* ¶ 18. This improper coding "resulted in a loss of pay and benefits." *Id.* ¶ 19.

In February 2020, Ms. Johnson contacted an equal employment opportunity ("EEO") counselor within the USPS to report discrimination and retaliation. *Id.* ¶ 20. Soon thereafter, she received and signed an Offer of Modified Assignment but "indicated on the form that she was doing so 'under protest.'" *Id.* The offer changed Ms. Johnson's start time from 8:00 a.m. to 10:00 a.m., which interfered with her childcare responsibilities. *Id.* ¶ 21.

2

As a result of the USPS's harassment and retaliation, Ms. Johnson's mental health declined. *Id.* ¶ 22. "[H]er psychiatric care provider recommended that she take a short leave of absence," and Ms. Johnson "provided management with documentation of her doctor's instructions." *Id.* Ms. Johnson alleges that she "was not advised of her rights under the FMLA" and that "management's improper coding of [her] OWCP leave forced her to use her annual leave." *Id.* ¶¶ 23-24.

In May 2020, Ms. Johnson and the USPS reached a settlement agreement. *Id.* ¶ 25. The agreement "provided that [Ms. Johnson]'s supervisor would sign and return [her] leave slips and would correct the leave that had been improperly recorded." *Id.* ¶ 26. Ms. Johnson returned to work the following month. *Id.* ¶ 27. Just a few days after her return, she suffered another on-the-job injury: she was chased by a dog, fell, and "injured her right wrist and shoulder, lower back, and both knees." *Id.* The next day, Ms. Clark "instructed [Ms. Johnson] to deliver her route as usual." *Id.* ¶ 32. Ms. Johnson informed Ms. Clark that she would be unable to do so because of her injuries. *Id.* ¶ 33. "Later that day, [Ms. Johnson] submitted a Duty Status Report detailing her injuries and stating that she could continue working under restrictions ordered by her doctor." *Id.* ¶ 34. Those restrictions included: "no lifting/carrying, climbing, kneeling, bending/stooping, twisting, pulling/pushing or driving a vehicle; standing, walking, reaching above the shoulders 2 hours intermittently; and sitting, simple grasping, or fine manipulation 8 hours continuously." *Id.* Ms. Clark indicated that there was no available work fitting those restrictions. *Id.* ¶ 35.

Ms. Johnson also requested traumatic injury continuation of pay ("COP") for her injuries through the OWCP, but Ms. Clark failed to report the injuries to the USPS's Human Resources Department. *Id.* ¶¶ 28-29. "The [COP] request was only submitted after the Union Steward was forced to intervene," and ultimately it took over a month for the request to be submitted. *Id.* ¶ 30.

The OWCP accepted Ms. Johnson's COP request in July 2020, but Ms. Clark again improperly coded her absences as LWOP or annual leave. *Id.* ¶ 36.

In December 2020, Human Resources informed Ms. Johnson that her health benefits had been terminated on July 31, 2020 "because she had not remained in a pay and duty status for eight pay periods following the period of leave taken in 2019." *Id.* ¶ 37. Ms. Johnson alleges that her benefits were terminated because Ms. Clark miscoded her OWCP leave as LWOP and failed to correct it. *Id.* ¶ 38. Further, Ms. Johnson was "prevented from returning to work, as [her] supervisor refused to assign work within her medical restrictions." *Id.* ¶ 39.

In February 2021, Ms. Johnson filed another EEO complaint "due to her supervisor's ongoing failure to correct the coding of [her] leave and additional miscoding of leave taken following [her] June 2020 injuries." *Id.* ¶ 40. Later that month, Ms. Johnson's supervisor emailed a nearby USPS facility, inquiring about light-duty job openings, as Ms. Johnson was still not working. *Id.* That email incorrectly stated Ms. Johnson's medical restrictions. *Id.*

In March 2021, the OWCP approved Ms. Johnson's request for "compensation for the period of January 30, 2021 through March 12, 2021, citing USPS's failure to provide [Ms. Johnson] with a written job offer." *Id.* ¶ 41. The OWCP instructed the USPS to provide Ms. Johnson with a job offer that complied with her medical restrictions. *Id.*

At some point between May and July 2021, Ms. Johnson returned to work in a new position. *See id.* ¶ 44. On July 7, 2021, Ms. Johnson "requested a copy of an 'Employee Everything Report' which would allow her to view records of her leave, how her leave was coded, pay, and benefits." *Id.* ¶ 47. The USPS refused to provide the report. *Id.*

On several occasions in July 2021, the USPS required Ms. Johnson to perform work in violation of her medical restrictions. *Id.* ¶ 45. For example, USPS employee Milan Smith required

4

Ms. Johnson to "lift and move heavy items" and stated that she had to perform work violating her restrictions "until management could prepare [Ms. Johnson] for her job and provide her the resources she needed." *Id.* During several periods between July and October 2021, Mr. Smith failed to provide login credentials and training Ms. Johnson needed to do her job. *Id.* ¶ 46. Mr. Smith also "placed [Ms. Johnson] on the wrong pay schedule, which interfered with her pay," and "made disrespectful, sexually harassing comments to [Ms. Johnson]." *Id.* ¶¶ 48-49.

In August 2021, Ms. Clark again improperly recorded Ms. Johnson's absences, "cod[ing] [her] as AWOL on August 18 and as LWOP on August 17 and August 19," and she continued to refuse Ms. Johnson's leave slips. *Id.* ¶ 49. "On one occasion, Ms. Clark intercepted leave slips and medical documentation [Ms. Johnson] sent by mail to Ms. Yamile Diaz, a manager." *Id.* ¶ 50.

Ms. Johnson further alleges that Ms. Clark: (1) "stated that EEO should stop investigating and 'find ways to make [Ms. Johnson] come to work,'" (2) "characterize[d] [Ms. Johnson]'s disabilities as a 'lifestyle' that is incompatible with [her] job duties," (3) said that the EEO "should encourage [Ms. Johnson] to bid to a different station, seek new employment, or resign," and (4) averred that "[Ms. Johnson] is no one special that I will waste my time or energy to worry, think, or talk about." *Id.* ¶ 43.

## II. Procedural History

Ms. Johnson filed this suit on August 11, 2023, alleging disparate treatment (Count I), failure to accommodate (Count II), hostile work environment (Count III), and retaliation (Count IV), all in violation of the Rehabilitation Act. *Id.* ¶¶ 52-80. She further alleges that the USPS violated the FMLA by interfering with her ability to take leave (Count V) and retaliating against her (Count VI). *Id.* ¶¶ 81-100. Ms. Johnson seeks compensatory and punitive damages, front and back pay, and attorney's fees and costs. *Id.*, Prayer for Relief, (a)-(d). The USPS filed

a motion to dismiss or, in the alternative, for summary judgment. ECF No. 13. The agency argues that Ms. Johnson's Rehabilitation Act claims fail because Ms. Johnson (1) did not exhaust her administrative remedies as to certain claims, (2) does not plausibly allege that she has a disability or is a "qualified individual" under the Act, and (3) fails to plausibly state claims for disparate treatment, hostile work environment, or retaliation. *Id.* at 7-8. The USPS further argues that Ms. Johnson's FMLA claims fail because (1) some are time-barred, (2) Ms. Johnson does not sufficiently allege that she was eligible for benefits or that she was prejudiced by the USPS's actions, and (3) she fails to plausibly allege the elements of a FMLA interference or retaliation claim. *Id.* at 8. Finally, the USPS argues that punitive damages are not available. *Id.*

### III.   Legal Standard

The USPS moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Iqbal*, 556 U.S. at 678)). "A complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC*, 798 F.3d at 1129 (alterations in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555. However, a court need not "accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### IV.   Discussion

#### A.   Rehabilitation Act

The Rehabilitation Act protects federal employees from disability discrimination. *See Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014). The act "requires federal employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014) (quoting 42 U.S.C. § 12112(b)(5)(A)). "To be a 'qualified individual' entitled to the Rehabilitation Act's protections, an individual must be able to perform, 'with or without reasonable accommodation,' 'the essential functions of the employment position that such individual holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)). "[T]he issue of whether an individual is qualified is a prerequisite to bringing *any* claim under the Rehabilitation Act." *Taylor v. Pompeo*, No. 19-CV-2987, 2021 WL 7904001, at *6 n.4 (D.D.C. Jan. 6, 2021).

"A determination that a plaintiff is not a 'qualified individual' is rare on a motion [to] dismiss." *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 94 (D.D.C. 2021). However, "such a finding can be appropriate . . . where a plaintiff has 'not indicated that he could perform the essential elements of his job . . . and has not identified any reasonable accommodation that would

7

allow him to do so.'" *Id.* (second alteration in original) (quoting *Saunders v. Galliher & Huguely Assocs., Inc.*, 741 F. Supp. 2d 245, 249 (D.D.C. 2010)).  That is the case here.  Ms. Johnson does not specify what reasonable accommodations would have allowed her to perform the essential functions of her job, or even what she believes the essential functions of her job to be.  ECF No. 1 ¶ 65; ECF No. 13, at 13-14; *see Thomas v. District of Columbia*, No. 22-CV-1269, 2023 WL 2610512, at *6 (D.D.C. Mar. 23, 2023) (dismissing a Rehabilitation Act claim where the plaintiff's complaint "contain[ed] no allegations about the essential functions of his . . . position, let alone that he could perform those functions with or without a reasonable accommodation").  Rather, Ms. Johnson merely states that "[a] reasonable accommodation would have allowed [her] to fulfill all essential functions of her job," ECF No. 1 ¶ 65—a legal conclusion that the court need not accept as true, *see Iqbal*, 556 U.S. at 678.  To be clear, the bar here is not a high one: the essential duties of a position are a question of fact which need not be alleged with "particularity." *Floyd v. Lee*, 968 F. Supp. 2d 308, 327 (D.D.C. 2013).  But Ms. Johnson has failed to allege her essential duties and relevant reasonable accommodations *at all*.

Ms. Johnson makes only one other statement that could bear on whether she is a "qualified individual" for purposes of the Rehabilitation Act: she alleges that she was "otherwise qualified for her position, as evinced by her long and successful employment history."  ECF No. 1 ¶ 56; *see* ECF No. 17, at 8.  Ms. Johnson seems to be asking the court to infer, from her employment history with the USPS, that she could perform the essential functions of her job with or without reasonable accommodations.  *See* 42 U.S.C. § 12111(8).  The court is unable to make this inference.

Ms. Johnson provides a vague, fragmented timeline of injury and employment.  Although she alleges generally that "[a]t all times relevant to this action, [she] suffered conditions including physical injuries to her back, wrist, shoulders, and knees, COPD, bronchitis, asthma, PTSD,

8

anxiety, and bipolar disorder," ECF No. 1 ¶ 53, her complaint presents a far less consistent picture. Ms. Johnson states that she injured her back and tailbone in December 2007; was "eventually . . . diagnosed with bipolar disorder and post-traumatic stress disorder" at some unspecified time thereafter; experienced an unspecified on-the-job injury in March 2019; took leave as a result of that injury for some period of time between March 2019 and January 2020; suffered a decline in her mental health in April 2020; and injured her wrist, shoulder, lower back, and knees in June 2020.  *Id.* ¶¶ 8-11, 13-14, 22, 27.

Thus, Ms. Johnson has alleged that the nature and severity of her impairment(s) evolved over the course of her employment with the USPS.  Her employment history also encompasses a period of ten-plus years (between her 2007 and 2019 injuries) during which it is unclear whether or to what degree she was impaired, and a period of injury-related leave during which she was (presumably) unable to work at all.  *See* ECF No. 1 ¶¶ 8-14.  "[I]n spite of the requirement that the Court draw all reasonable inferences in the plaintiff's favor, some factual allegations will render certain inferences unreasonable."  *Badwal v. Bd. of Trs. of the Univ. of D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015).  It would be unreasonable for the court to infer, based on Ms. Johnson's uneven employment history alone, that she could perform the essential functions of her position "with or without reasonable accommodation."  42 U.S.C. § 12111(8).

Because Ms. Johnson has not plausibly alleged that she is a "qualified individual," the court will dismiss her Rehabilitation Act claims (Counts I through IV).[1]

---

[1] Because Ms. Johnson has failed to plead this threshold requirement of her Rehabilitation Act claims, the court declines to consider whether she has properly exhausted her administrative remedies, plausibly alleged that she has a disability for purposes of the Act, or otherwise stated plausible claims for disparate treatment, hostile work environment, or retaliation.

9

### B. Family Medical Leave Act

The FMLA entitles eligible employees "to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the[ir] position." 29 U.S.C. § 2612(a)(1)(D). The statute makes it unlawful for employers to "interfere with, restrain, or deny the exercise" of that right or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. *Id.* § 2615(a). Ms. Johnson alleges that the USPS interfered with her rights under the FMLA (Count V) and retaliated against her for engaging in activity protected by the FMLA (Count VI). ECF No. 1 ¶¶ 81-100. The court concludes that certain of Ms. Johnson's claims are barred by the FMLA's statute of limitations, and that Ms. Johnson has otherwise failed to state plausible interference and retaliation claims.[2]

#### 1. Interference

Before addressing the merits of Ms. Johnson's interference claims, the court must consider the FMLA's statute of limitations. Generally, a plaintiff must bring her FMLA claims "not later than 2 years after the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1). However, in the case of a willful violation of the FMLA, "such action may be brought within 3 years of the date of the last event constituting the alleged violation." *Id.* § 2617(c)(2). Because Ms. Johnson alleges willful violations, *see* ECF No. 1 ¶¶ 88, 98, the three-year statute of limitations applies. Ms. Johnson filed this case on August 11, 2023, *see* ECF No. 1, meaning that the violations must have occurred on or after August 11, 2020 to be timely. "At the motion to dismiss stage, dismissal on statute-of-limitations grounds is proper 'only if the

---

[2] Therefore, the court need not consider whether Ms. Johnson has plausibly alleged that she was eligible for FMLA benefits or prejudiced by the USPS's actions, or whether punitive damages are available.

complaint on its face is conclusively time-barred.'" *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 788 (D.C. Cir. 2019) (quoting *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019)).

Two of Ms. Johnson's alleged FMLA violations are clearly time-barred. First, after her December 2007 accident, Ms. Johnson sought leave under the FMLA, but her request was denied. ECF No. 1 ¶¶ 8-12. Second, after Ms. Johnson's doctor advised her to take a leave of absence in April 2020, the USPS failed to advise her of her rights under the FMLA and "denied [her] the opportunity to exercise those rights." *Id.* ¶¶ 22-23. These claims fall outside the FMLA's three-year statute of limitations. And, because the USPS raised this argument in its motion to dismiss, *see* ECF No. 13, at 32-33, and Ms. Johnson did not dispute that these claims were untimely, *see* ECF No. 17, at 11-12, this argument is conceded, *see Nat'l Sec. Couns. v. C.I.A.*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020).

This leaves Ms. Johnson's remaining allegations:

- that "[o]n December 4, 2020, [she] was notified that her health benefits were terminated on July 31, 2020, because . . . Ms. Clark miscoded [her] OWCP leave as LWOP";

- that between December 2020 and July 2021, she was "prevented from returning to work given . . . her supervisor's refusal to assign work within her medical restrictions";

- that in July 2021, "management on several occasions worked [Ms. Johnson] outside of her medical restrictions";

- and that, in August 2021, "Ms. Clark retaliated against [Ms. Johnson] by improperly recording [her] absences."

ECF No. 17, at 12; *see* ECF No. 1 ¶¶ 37-39, 45, 49.

Assuming that all four incidents are timely, none could plausibly constitute interference with Ms. Johnson's FMLA rights. "To avail h[er]self of the protections of the FMLA, an employee must specifically take FMLA leave; naturally, all absences from work and all types of leave are

11

not covered." *Harris v. D.C. Water & Sewer Auth.*, 172 F. Supp. 3d 253, 268 (D.D.C. 2016). Ms. Johnson alleges that Ms. Clark miscoded her OWCP leave, resulting in the termination of her health benefits, and that the USPS prevented her from returning from OWCP leave to work. ECF No. 1 ¶¶ 13-14, 18-19, 37-39. But OWCP leave is guaranteed by the Federal Employees' Compensation Act ("FECA"), not the FMLA. *See Pueschel*, 357 F. Supp. 3d at 24 ("FECA governs OWCP benefits[.]"). Ms. Johnson further alleges that Ms. Clark "improperly record[ed] [her] absences" in August 2021—but again, Ms. Johnson does not allege that she was absent because she was taking FMLA leave. ECF No. 1 ¶ 49; *see* ECF No. 13, at 32 ("[Ms.] Johnson alleges only two occasions on which she attempted to avail herself of the FMLA's protections— first on an unspecified occasion between December 2007 and March 27, 2019, and then in April 2020."). Interference with FECA and other non-FMLA leave, without more, does not violate the FMLA. *See Harris*, 172 F. Supp. 3d at 268 (finding that the plaintiff could not prevail on his FMLA claims where he indicated that he was taking annual leave, not FMLA leave).

Additionally, the allegation that "management on several occasions worked [Ms. Johnson] outside of her medical restrictions" cannot constitute a FMLA interference claim. ECF No. 1 ¶ 45. The FMLA, unlike the Americans with Disabilities Act ("ADA") or the Rehabilitation Act, does not require employers to reasonably accommodate an employee's disabilities or medical restrictions. *See Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 40 (D.D.C. 2011). "Any duty to accommodate the employee is governed solely by the ADA [or the Rehabilitation Act]." *Elzeneiny v. District of Columbia*, 195 F. Supp. 3d 207, 224 (D.D.C. 2016) (quoting *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 865 (8th Cir. 2006)).

Because Ms. Johnson has not plausibly alleged that the USPS interfered with her rights under the FMLA, the court will dismiss Count V.

### 2. Retaliation

To state a claim for retaliation under the FMLA, Ms. Johnson must plausibly allege "(1) the exercise of protected FMLA activity; (2) an adverse employment decision; and (3) a causal connection between the protected activity and the adverse action." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020). Ms. Johnson claims that she engaged in four protected activities under the FMLA: (1) "disclosing her medical conditions," (2) "requesting medical leave," (3) "taking medical leave," and (4) "filing EEO complaints opposing [the] USPS's initial unlawful retaliation." ECF No. 1 ¶¶ 92, 94. The court assesses each in turn.

*Disclosing medical conditions.* Ms. Johnson states that after she returned to work from OWCP leave in January 2020, she "engaged in the protected activity of notifying supervisors and management of her disabilities and requesting reasonable accommodations." ECF No. 1 ¶¶ 14-15. This incident falls outside the three-year statute of limitations, and Ms. Johnson cites no legal authority for the proposition that disclosing a medical condition (divorced from any other activity, like a request for FMLA leave) is protected by the FMLA. *See* ECF No. 17, at 15. Rather, she suggests that she disclosed her disabilities in the context of a request for reasonable accommodations, not a request for FMLA leave. ECF No. 1 ¶ 15. As explained above, the "FMLA omits any requirement that employers seek to reasonably accommodate employees . . . . Any duty to accommodate the employee is governed solely by the ADA." *Elzeneiny*, 195 F. Supp. 3d at 224 (quoting *Battle*, 438 F.3d at 865); *see Etheridge*, 789 F. Supp. 2d at 40. The court cannot reasonably infer that Ms. Johnson engaged in any FMLA-protected activity by requesting unspecified reasonable accommodations for her disabilities in January 2020.

*Requesting medical leave.* An employer may not retaliate against an employee for requesting FMLA leave. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015). Ms. Johnson requested FMLA leave on two occasions, both outside of the three-year statute of

limitations: after her December 2007 injury, and in April 2020. ECF No. 1 ¶¶ 8-12, 22-23. However, retaliation requires both a protected activity and an adverse action by the employer. *Waggel*, 957 F.3d at 1375. If the adverse action (the "last event constituting the violation") occurred within the statute of limitations, the claim would presumably be timely. *See* 29 U.S.C. § 2617(c)(2).

Ms. Johnson does not allege that the USPS took any adverse action against her between December 2007 and March 2019—in fact, she alleges no facts about that time period at all. *See* ECF No. 1 ¶¶ 8-13. She has therefore failed to allege a retaliation claim related to her December 2007 request for FMLA leave.

Turning to the April 2020 request, Ms. Johnson seems to claim that her supervisor, Ms. Clark, retaliated against her by improperly coding her absences as LWOP or annual leave.[3] *See* ECF No. 1 ¶¶ 24, 36-38; *Roseboro v. Billington*, 606 F. Supp. 2d 104, 110 (D.D.C. 2009) (finding FMLA retaliation where the plaintiff's employer "wrongly denied [him] FMLA leave and charged [him] AWOL during that period"). Ms. Johnson's causation argument rests entirely on the temporal proximity between her protected activity and Ms. Clark's miscoding. Ms. Johnson argues that "there is a direct causal relationship between [her] protected activities and [the USPS]'s adverse actions against her, as [she] suffered adverse actions that occurred shortly after engaging in protected activities." ECF No. 17, at 15. Temporal proximity between protected activity and adverse action "is often . . . sufficient to establish the requisite causal connection for such claims," *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000), but the two events must be "very close in time," *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C.

---

[3] Ms. Johnson also alleges that Ms. Clark retaliated against her by failing to submit her COP request in June 2020, but this incident clearly falls outside the statute of limitations.

Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)).  While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation."  *Hamilton*, 666 F.3d at 1357-58.  "When the chief evidence relied upon by the plaintiff to establish the causal connection is the temporal proximity, courts have, at a minimum, required the plaintiff to plead specific dates of the protected activity and the adverse action."  *Pierre v. Woods Servs.*, *Inc.*, No. 20-CV-5881, 2021 WL 84068, at *5 (E.D. Pa. Jan. 11, 2021) (quoting *Grasty v. World Flavors, Inc.*, No. 11-CV-1778, 2011 WL 3515864, at *10 (E.D. Pa. Aug. 11, 2011)); *see Spence v. Dep't of Veterans Affs.*, No. 19-CV-1947, 2022 WL 3354726, at *9 (D.D.C. Aug. 12, 2022).

For the most part, Ms. Johnson "neglects . . . to specify the dates"—or even the months or years—when Ms. Clark miscoded her leave.  *Spence*, 2022 WL 3354726, at *9.  She alleges that Ms. Clark improperly coded her leave at seven different points in the complaint, *see* ECF No. 1 ¶¶ 18, 24, 36, 38, 40, 42, 49, but five of those allegations do not indicate when the alleged miscoding occurred, *see id.* ¶¶ 18, 24, 38, 40, 42.  "Without knowing the precise dates . . . and because [she] pleads no other facts that would provide direct evidence of retaliation, this Court cannot possibly make 'an inference of causation' necessary to sustain her claim."  *Spence*, 2022 WL 3354726, at *9 (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015)); *see Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) ("To prove intent and causation, the [plaintiff] must at least establish a 'chronology of events from which retaliation may be plausibly inferred.'" (quoting *Butts v. Martin*, 877 F.3d 571, 588-89 (5th Cir. 2017))); *Jones v. Unity Behav. Health, LLC*, No. 20-CV-14265, 2021 WL 5495578, at *3 (11th Cir. Nov. 23, 2021) ("Nor does the amended complaint offer[] details to show when the alleged protected activity

occurred in relation to the plaintiffs' termination, so it doesn't permit an inference of causation based on temporal proximity.").

Only two allegations specify when Ms. Clark improperly coded Ms. Johnson's leave. ECF No. 1 ¶¶ 36, 49. First, "[o]n July 30, 2020, OWCP informed [Ms. Johnson] that her COP request had been accepted. However, Ms. Clark was once again discriminating and retaliating against [Ms. Johnson] by improperly coding her absence as LWOP or annual leave." *Id.* ¶ 36. This incident falls outside the three-year statute of limitations.[4] Second, "[i]n August 2021, Ms. Clark once again retaliated against [Ms. Johnson] by improperly recording [her] absences. Ms. Clark coded [Ms. Johnson] as AWOL on August 18 and as LWOP on August 17 and August 19." *Id.* ¶ 49. While this incident falls within the three-year statute of limitations, it is more than a year removed from the alleged protected activity—Ms. Johnson's April 2020 request for FMLA leave. *See id.* ¶ 22. A gap of approximately sixteen months between protected activity and adverse action "suggests, by itself, no causality at all." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001).

*Taking medical leave.* Ms. Johnson does not allege that she ever took FMLA leave. *See* ECF No. 1 ¶¶ 13-14, 18, 36 (describing OWCP leave). As explained, taking non-FMLA leave is not protected by the FMLA and thus cannot constitute a protected activity for purposes of a retaliation claim under the FMLA. *See Harris*, 172 F. Supp. 3d at 268.

---

[4] While the complaint is not a model of clarity, it seems possible that Ms. Johnson did not learn of Ms. Clark's improper coding until later. The complaint states: "On December 4, 2020, Human Resources notified [Ms. Johnson] that her health benefits were terminated on July 31, 2020." ECF No. 1 ¶ 37. However, Ms. Johnson does not argue that the statute of limitations was tolled, *see generally* ECF No. 17, and that argument is therefore forfeited, *see Nat'l Sec. Couns.*, 898 F. Supp. 2d at 268.

*Filing EEO complaints.* Ms. Johnson alleges that she engaged in protected activity under the FMLA by "filing EEO complaints opposing [the] USPS's initial unlawful retaliation." ECF No. 17, at 15. Because it is unclear which of her two EEO complaints Ms. Johnson is referring to, the court will consider each in turn.

In February 2020, Ms. Johnson "contact[ed] an EEO counselor to report . . . discrimination and retaliation." ECF No. 1 ¶ 20. Ms. Johnson does not specify whether she was challenging *FMLA* discrimination or retaliation, or some other type of discrimination or retaliation. *See id.* The FMLA protects only those individuals who "oppos[e] any practice made unlawful by" the FMLA itself. 29 U.S.C. § 2615(a)(2). In any event, the February 2020 EEO complaint falls outside the statute of limitations, and any retaliatory action taken within the statute of limitations (August 11, 2020 or later) would be at least six months removed from the alleged protected activity and is therefore too attenuated to establish causation based on temporal proximity alone. *See, e.g.*, *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 86 (D.D.C. 2013) (finding that a four-month delay could not support an inference of causation).

In February 2021, Ms. Johnson filed "another EEO complaint due to her supervisor's ongoing failure to correct the coding of [her] leave and additional miscoding of leave taken following [her] June 2020 injuries." ECF No. 1 ¶ 40. Again, this complaint only qualifies as protected activity under the FMLA if the EEO complaint opposed a practice made unlawful by the FMLA. *See* 29 U.S.C. § 2615(a)(2). As discussed above, miscoding non-FMLA leave, without more, does not violate the FMLA. *See Harris*, 172 F. Supp. 3d at 268. And even if Ms. Johnson had clearly challenged a practice made unlawful by the FMLA in her February 2021 EEO complaint, she has failed to plausibly allege that the USPS took subsequent adverse action because of that complaint. Ms. Johnson states that the "USPS's continued harassment and denial of work,

17

pay, and benefits . . . constitute reprisal for [her] EEO complaints." ECF No. 1 ¶ 95. But the only such incidents occurred "between July 2021 and October 2021"—five to eight months after her February 2021 EEO complaint. *See* ECF No. 1 ¶¶ 46-48. Therefore, even if Ms. Johnson's February 2021 EEO complaint did qualify as protected activity under the FMLA, the temporal relationship between the complaint and any adverse action is too attenuated to suggest the requisite causation. *See Bergbauer*, 934 F. Supp. 2d at 86.

Because Ms. Johnson has not plausibly alleged a retaliation claim under the FMLA, the court will dismiss Count VI.

## V.   Conclusion

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 13. A contemporaneous Order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: September 17, 2024